**In the Matter of the EXTRADITION OF Daya Singh LAHORIA and Suman Sood.**

**No. 4:96–CR–028–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

June 11, 1996.

804

Michael Logan Ware, Law Office of Michael Logan Ware, Fort Worth, TX, Jagdip Singh Sekhon, San Francisco, CA, for defendants.

John Bradford and J. Michael Worley, U.S. Attorney's Office, Fort Worth, TX, for plaintiff.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

On June 4, 1996, came on for hearing the above-captioned extradition proceeding in which the United States Attorney for the Northern District of Texas ("movant") is acting on behalf of the government of the Republic of India ("India"). The fugitives are Daya Singh Lahoria (a/k/a Daya Singh Sandhu) (hereinafter "Lahoria") and Suman Sood (a/k/a Kamaljeet Kaur Sandhu) (hereinafter "Sood") (collectively hereinafter "fugitives"). Having considered the evidence received at the hearing, as well as the arguments and authorities filed prior to the hearing and delivered orally at the hearing, the court[1] has concluded that a certification of the kind contemplated by 18 U.S.C. § 3184 should issue as to certain offenses listed in the complaint by which the proceeding was instituted.

---

1. From time to time in this memorandum opinion and order the undersigned judge refers to himself as the "court." However, the undersigned judge has acted, and is acting, in the capacity contemplated by 18 U.S.C. § 3184 with respect to all actions taken and all findings and rulings made in this proceeding.

## I. PROCEDURAL HISTORY

This proceeding was instituted on March 5, 1996, with movant's filing of a verified complaint stating that Lahoria and Sood are charged in India with the commission in India of specified offenses covered by the extradition treaty in force between the United States and India. On that same date, the undersigned judge ordered the issuance of warrants for the arrests of Lahoria and Sood. On April 2, 1996, following a series of hearings in this action, during which the determination was made that the two persons arrested (Lahoria and Sood) are the same as the two persons whose extradition is sought by the complaint, the court set the extradition hearing for 9:00 a.m. on June 3, 1996. On May 9, 1996, the court granted fugitives' motion for continuance, and rescheduled the extradition hearing for 9:00 a.m. on June 4, 1996.

This proceeding was called for hearing on June 4, 1996. Counsel for movant announced ready for hearing. Fugitives, appearing in person and through their attorneys, announced they were not ready for hearing, but were present. Both sides proceeded to present evidence and argument. The court took the matter under advisement.

## II. GENERAL EXTRADITION PRINCIPLES

■ International extradition proceedings are governed both by statute (18 U.S.C. §§ 3181, 3184, 3186, 3188–3191) and by treaty. *See* 18 U.S.C. § 3184. In applying an extradition treaty, the court is to construe it liberally in favor of the requesting nation. *Factor v. Laubenheimer,* 290 U.S. 276, 293–94, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933).

The treaty under which fugitives' extradition is sought is the Extradition Treaty Between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (hereinafter "Treaty"), a copy of which is provided in Government's Exhibit 1. Because the Treaty is central to the proceedings, the court must initially determine whether the Treaty is a valid extradition treaty in force between the United States and India, *see* 18 U.S.C. § 3184, and then must determine whether it is applicable.

■ In addition to determining the validity and applicability of the Treaty, the court must determine whether the charged offenses may provide a basis for fugitives' extradition. This requires that the court determine whether the charged offenses are listed in the Treaty as extraditable offenses. *See, e.g., Cucuzzella v. Keliikoa,* 638 F.2d 105, 107 (9th Cir.1981). It also requires that the court determine whether the principle of dual criminality applies, and if so, whether it is satisfied. *See Caplan v. Vokes,* 649 F.2d 1336, 1343 (9th Cir.1981).

■ The court must also determine whether the evidence supports a probable cause finding as to each charged offense. According to the applicable statute, the court's responsibility is to determine whether, under the Treaty, the evidence is sufficient to sustain the charges that Lahoria and Sood committed the offenses alleged in the complaint. 18 U.S.C. § 3184. The Treaty specifies that such evidence is that which would justify the committal of the fugitives for trial had the charged offenses been committed within the United States. *See* Treaty, art. 9. Such evidence is known as "probable cause," or as evidence "furnishing good reason to believe that the crime alleged [was] committed by the person charged with having committed it," *Jimenez v. Aristeguieta,* 311 F.2d 547, 562 (5th Cir.1962), *cert. denied,* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963), or evidence establishing "reasonable ground to believe the accused guilty," *Escobedo v. United States,* 623 F.2d 1098, 1102 (5th Cir.), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980); *see also In re Extradition of Russell,* 789 F.2d 801, 802 (9th Cir. 1986).

In addition, the court must determine whether any of the Treaty's exceptions bar fugitives' extradition for any of the charged offenses. For example, the court must decide whether the Treaty's political offense exception applies. *See Quinn v. Robinson,* 783 F.2d 776, 781–818 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986); *Escobedo,* 623 F.2d at 1104; *Garcia-Guillern v. United States,* 450 F.2d 1189,

1192–93 (5th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

Finally, the court determines whether any of fugitives' defenses would bar their extradition.

### III. *EXTRADITION TREATY*

■ Movant has presented evidence that the Treaty is in full force and effect between the United States and India. Gov't Ex. 1, 1C, and 1D. And, other courts have recognized that the Treaty is valid and in force between the United States and India. *E.g., Jhirad v. Ferrandina,* 486 F.2d 442, 443 & n. 3 (2nd Cir.1973); *Jhirad v. Ferrandina,* 355 F.Supp. 1155, 1158–60 (S.D.N.Y.), *rev'd on other grounds,* 486 F.2d 442 (2nd Cir.1973). The court is satisfied, and finds, that the Treaty is valid and in force between United States of America and the Republic of India, in accordance with article 14 of the Treaty.

### IV. *STIPULATED FACTS*

The parties, in their Joint Prehearing Report to the court, agreed and stipulated to the facts set forth below:

b. The parties agree and stipulate that the Court is authorized under Title 18, United States Code, Section 3184, to conduct an extradition hearing, if Section 3184 is constitutional and if there is currently in force an extradition treaty between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty"), applicable to India from March 9, 1942, in accordance with Article 14 of the 1931 Treaty.

c. The parties agree and stipulate that the Court has personal jurisdiction over Daya Singh Sandhu (DAYA SINGH LAHORIA) and Kamaljeet Kaur Sandhu (SUMAN SOOD), hereinafter, the fugitives, and subject matter jurisdiction over the case, if Section 3184 is constitutional and if there is currently in force an extradition treaty between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty), applicable to India from March 9, 1942, in accordance with Article 14 of the 1931 Treaty.

* * * * * *

e. The parties agree and stipulate that pursuant to the 1931 Treaty, the Government of India has submitted a formal request through diplomatic channels, in proper form, for the extradition of Daya Singh Sandhu (DAYA SINGH LAHORIA) and Kamaljeet Kaur Sandhu (SUMAN SOOD).

f. The parties agree and stipulate that Daya Singh Sandhu (DAYA SINGH LAHORIA) has been charged in the requesting state with violation of Section 302 (murder), Section 307 (attempted murder), Section 436 (arson), Section 427 (mischief), Section 120–B (criminal conspiracy) of the Indian Penal Code, 1860 [IPC]; and Section 4 (punishment for attempt to cause explosion or for making or keeping explosives with intent to endanger life or property) and Section 5 (punishment for making or possessing explosives under suspicious circumstances) of the Explosives Act, 1908, alleged to have been committed in India in 1993; and Section 364–A (kidnapping for ransom), Section 365 (kidnapping or abduction with intent secretly and wrongfully to confine persons), Section 120–B (criminal conspiracy), Section 201 (causing disappearance of evidence of offence or giving false information to screen offender), Section 343 (wrongful confinement), Section 468 (forgery for cheating), Section 346 (wrongful confinement), Section 420 (cheating), Section 467 (forgery), and Section 471 (uttering), of the Indian Penal Code, 1860 [IPC]; and Section 4 (punishment for attempt to cause explosion or for making or keeping explosives with intent to endanger life or property) and Section 5 (punishment for making or possessing explosives under suspicious circumstances) of the Explosives Act, 1908 alleged to have been committed in India in 1995. These charges constitute crimes under the Indian Penal Code and the Explosives Act, 1908 and these charges constitute extraditable offenses within the meaning of the extradition treaty between the United

States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty"), applicable to India from March 9, 1942, in accordance with Article 14 of the 1931 treaty.

\* \* \* \* \* \*

g. The parties agree and stipulate that Kamaljeet Kaur Sandhu (SUMAN SOOD) has been charged in the requesting state with violation of Section 307 (attempt to murder), Section 353 (assault or criminal force to deter a public servant from discharge of his duty), Section 365 (kidnapping or abduction), Section 468 (forgery for cheating), Section 120–B (criminal conspiracy), Section 364–A (kidnapping for ransom), Section 201 (causing disappearance of evidence of offence, or giving false information to screen offender), Sections 343 and 346 (wrongful confinement), Section 420 (forgery), and Section 471 (uttering), of the Indian Penal Code, 1860 [IPC], and Section 4 (keeping explosives for an attempt to cause explosion) and Section 5 (possession of explosives under suspicious circumstances) of the Explosive Substances Act, 1908, alleged to have been committed in India in 1995. These charges constitute crimes under the Indian Penal Code and the Explosives Act, 1908 and, these charges constitute extraditable offenses within the meaning of the extradition treaty between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty"), applicable to India from March 9, 1942, in accordance with Article 14 of the 1931 treaty.

\* \* \* \* \* \*

i. The parties agree and stipulate that Daya Singh Sandhu (DAYA SINGH LAHORIA) and Kamaljeet Kaur Sandhu (SUMAN SOOD) who appear before this court are one and the same individuals against whom the charges in paragraphs f and g are pending and have been filed by the state of India.

j. The parties agree and stipulate that pursuant to Article 12 of the extradition treaty in force between the United States

and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty"), applicable to India from March 9, 1942, the Government of India requests the seizure of all articles in possession of the fugitives which may serve as evidence of the offenses for surrender with the fugitives.

k. The parties agree and stipulate that Samuel Witten, an Attorney–Adviser in the Office of the Legal Adviser of the United States Department of State, Washington, D.C., has executed a declaration, marked Government's Exhibit 1, authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the extradition treaty in force between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty"), applicable to India from March 9, 1942, stating that the offenses for which extradition is demanded are covered by the treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal American diplomatic or consular officer in India, in accordance with Title 18, United States Code, Section 3190.

l. The parties agree and stipulate that no treaty exception exists to bar the extradition under Articles Four or Five of the extradition treaty in force between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (the "1931 Treaty"), applicable to India from March 9, 1942.

Joint Prehearing Report to the Court at 2–4. The court accepts the agreements and stipulations of the parties.

## V. CHARGED OFFENSES

The offenses for which fugitives are sought to be extradited are stated as follows in the complaint:

4. Daya Singh Lahoria is charged with violation of Section 364–A (kidnapping for ransom), Section 365 (kidnapping or abduc-

tion with intent secretly and wrongfully to confine persons), Section 120–B (criminal conspiracy), Section 201 (causing disappearance of evidence of offence or giving false information to screen offender), Section 343 (wrongful confinement), Section 468 (forgery for cheating), Section 302 (murder), Section 307 (attempted murder), Section 436 (arson), Section 427 (mischief), Section 346 (wrongful confinement), Section 420 (cheating), Section 467 (forgery), and Section 471 (uttering), of the Indian Penal Code, 1860 [IPC]; and Section 4 (punishment for attempt to cause explosion or for making or keeping explosives with intent to endanger life or property), and Section 5 (punishment for making or possessing explosives under suspicious circumstances), of the Explosives Act, 1908; all committed within the jurisdiction of the requesting state;

Suman Sood is charged with violation of Section 307 (attempt to murder), Section 363 (assault or criminal force to deter a public servant from discharge of his duty),[2] Section 365 (kidnapping or abduction), Section 468 (forgery for cheating), Section 120–B (criminal conspiracy), Section 364–A (kidnapping for ransom), Section 109 (abetment), Section 201 (causing disappearance of evidence of offence, or giving false information to screen offender), Sections 343 and 346 (wrongful confinement), Section 420 (forgery), and Section 471 (uttering), of the Indian Penal Code, 1860 [IPC], and Section 4 (keeping explosives for an attempt to cause explosion) and Section 5 (possession of explosives under suspicious circumstances) of the Explosive Substances Act, 1908; all committed within the jurisdiction of the requesting state;

Complaint ¶ 4, at 2–3.

An examination of the Indian Penal Code ("IPC")[3] discloses that not all of the offenses are listed in the complaint according to their full description. For example, Lahoria alleg-edly is charged with "cheating" in violation of § 420, Complaint ¶ 4, yet the offense proscribed by § 420 is actually "cheating and dishonestly inducing the delivery of property," IPC § 420. To avoid confusion, the offenses are listed below according to the names they are given in the IPC:

1. IPC § 109. Punishment of abetment if the act abetted is committed in consequence and where no express provision is made for its punishment.

2. IPC § 120–B. Punishment of criminal conspiracy.

3. IPC § 201. Causing disappearance of evidence of offence, or giving false information to screen offender.

4. IPC § 302. Punishment for murder.

5. IPC § 307. Attempt to murder.

6. IPC § 343. Wrongful confinement for three or more days.

7. IPC § 346. Wrongful confinement in secret.

8. IPC § 353. Assault or criminal force to deter public servant from discharge of his duty.

9. IPC § 364–A. Kidnapping for ransom, etc.

10. IPC § 365. Kidnapping or abducting with intent secretly and wrongfully to confine person.

11. IPC § 420. Cheating and dishonestly inducing delivery of property.

12. IPC § 427. Mischief causing damage to the amount of fifty rupees.

13. IPC § 436. Mischief by fire or explosive substance with intent to destroy house, etc.

14. IPC § 467. Forgery of valuable security, will, etc.

15. IPC § 468. Forgery for purpose of cheating.

---

2. Section 363 of the Indian Penal Code is actually titled "Punishment for kidnapping," and § 353 is the one titled "Assault or criminal force to deter public servant from discharge of his duty." Apparently the section number was simply mistyped in the complaint. Indeed, in its precis of charges, movant addresses § 353 rather than

§ 363. Precis of Charges at 20. Accordingly, the court proceeds as though Sood is charged under § 353 rather than under § 363.

3. Government's Exhibit 1E is a copy of the Indian Penal Code.

16. IPC § 471. Using as genuine a forged document.

An examination of the Explosive Substances Act ("ESA")[4] discloses that the offenses are not listed in the complaint according to their full description. To avoid confusion, the offenses are listed below according to the names that they are given in the ESA:

1. ESA § 4. Punishment for attempt to cause explosion, or for making or keeping explosive with intent to endanger life or property.

2. ESA § 5. Punishment for making or possessing explosives under suspicious circumstances.

Where appropriate, the court will refer to the allegedly charged offenses by the complete name given them in the IPC or ESA.

Upon examination of the evidence, the court is satisfied, and finds, that fugitives are indeed charged in India with the offenses for which their extradition is sought. *See* Gov't Ex. 1, Diplomatic Note No. WAS/C/PERS/815/3(B)/95, dated Feb. 12, 1996.

## VI. *WHETHER THE CHARGED OFFENSES MAY PROVIDE A BASIS FOR FUGITIVES' EXTRADITION*

A. *Extraditable Offenses Under the Treaty*

The following offenses charged against Lahoria and Sood are clearly listed as extraditable offenses under the Treaty, as is indicated by the parenthetical citations to the relevant parts of the Treaty:

1. IPC §§ 300 and 302. Murder (Treaty, art. 3.1)[5];

2. IPC § 307. Attempt to murder (Treaty, art. 3.1);

3. IPC § 343. Wrongful confinement for three or more days (Treaty, art. 3.7, 3.9);

4. IPC § 346. Wrongful confinement in secret (Treaty, art. 3.7, 3.9);

5. IPC § 364–A. Kidnapping for Ransom, etc. (Treaty, art. 3.7, 3.9);

6. IPC § 365. Kidnapping or abduction with intent secretly and wrongfully to confine persons (Treaty, art. 3.7, 3.9);

7. IPC § 420. Cheating and dishonestly inducing the delivery of property (Treaty, art. 3.18);

8. IPC § 436. Mischief by fire or explosive substance with intent to destroy house, etc. ("arson") (Treaty, art. 3.15);

9. IPC § 467. Forgery of valuable security, will, etc. (Treaty, art. 3.20);

10. IPC § 468. Forgery for purpose of cheating (Treaty, art. 3.20); and,

11. IPC § 471. Using as genuine a forged document ("uttering") (Treaty, art. 3.20).

In addition, under a careful reading of the charged offense, and in keeping with the principle that the Treaty is to be construed liberally in favor of India, the court finds that the following offenses are extraditable offenses, as is indicated by the parenthetical citations to the relevant parts of the Treaty:

1. IPC §§ 107 and 109. Abetment if the act abetted is committed in consequence and where no express provision is made for its punishment (Treaty, art. 3 ("Extradition is to be granted for participation in any of the aforesaid crimes or offences....")); [6]

2. IPC §§ 120–A and 120–B. Criminal conspiracy (Treaty, art. 3 ("Extradition is to be granted for participation in any of the

---

4. The text of §§ 4 and 5 of the Explosive Substances Act is set forth in Government's Exhibit 1B at 235.

5. The complaint alleges that Lahoria is charged with "murder," and makes reference to IPC § 302, which does not state the offense of murder but rather the punishment for that offense. It is apparent that Lahoria could not be charged under § 302 without also having been charged with murder, in violation of IPC § 300. Accordingly, the court addresses the extraditability of the offense of murder.

6. The complaint alleges that Sood is charged with "abetment," and makes reference to IPC § 109, which does not state the offense of abetment but rather the punishment for that offense. It is apparent that Sood could not be charged under § 109 without also having been charged with abetment in violation of IPC § 107. Accordingly, the court addresses the extraditability of the offense of abetment.

aforesaid crimes or offences. . . .")); *see* Treaty, art. 3.1; [7]

3. IPC § 353. Assault or criminal force to deter a public servant from discharge of his duty (*see* Treaty, art. 3.12, 3.13);

4. IPC § 427. Mischief causing damage to the amount of fifty rupees (*see* Treaty, art. 3.15, 3.25); and,

5. Violations of the ESA (*see* Treaty, art. 3.23, 3.25).

The court does not find the charged offense of "causing disappearance of evidence of offence or giving false information to screen offender," IPC § 201, listed among those for which extradition can be granted. The court further notes that movant's supplemental precis of charges, which, for most offenses, cites to the portion of the Treaty in which such offense is listed as extraditable, contains no such citation for this offense. *See* Supplemental Precis of Charges ¶ 9, at 5. Because this offense is not listed among those for which extradition can be granted, the court finds that neither Lahoria nor Sood may be extradited for this offense. Accordingly, the court does not address this offense during the remaining analysis.

7. The complaint alleges that Lahoria and Sood are charged with "criminal conspiracy," and makes reference to IPC § 120–B, which does not state the offense of criminal conspiracy but rather the punishment for that offense. It is apparent that Lahoria and Sood could not be charged under § 120–B without also having been charged with criminal conspiracy, in violation of IPC § 120–A. Accordingly, the court addresses the extraditability of the offense of criminal conspiracy.

8. The Supreme Court described the principle as follows:

> The general principle of international law is that in all cases of extradition the act done on account of which extradition is demanded must be considered a crime by both parties. . . . The offence must be "made criminal by the laws of both countries."
>
> *Wright,* 190 U.S. at 58, 23 S.Ct. at 785.

9. As the First Circuit explained, "[t]he requirement that the acts alleged be criminal in both jurisdictions is central to extradition law and has been embodied either explicitly or implicitly in all prior extradition treaties between the United States and Great Britain since the Jay Treaty of 1794." *Brauch,* 618 F.2d at 847.

## B. *Dual Criminality*

■ The principle of dual criminality dictates that a fugitive may be extradited only if the acts constituting the offense are criminal in both the jurisdiction in which the fugitive is found and the jurisdiction to which the fugitive's extradition is sought. *Caplan,* 649 F.2d at 1343. The principle is a general policy of extradition, and arguably applies even absent explicit inclusion in the treaty in question. *See Wright v. Henkel,* 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903) [8]; *Brauch v. Raiche,* 618 F.2d 843, 847 (1st Cir.1980) [9]; *cf. In re Extradition of Russell,* 789 F.2d at 803. On the other hand, there is authority suggesting that the principle does not apply unless it is expressly stated in the treaty. *See Factor,* 290 U.S. at 287–90, 54 S.Ct. at 193–94.

■ The principle of dual criminality is not explicitly stated in the Treaty, although certain portions of the Treaty could conceivably be read to include such principle, at least as to participation in extraditable offenses.[10] Yet, ultimately, the question of whether the principle should apply in this case is moot because in fact it is satisfied.

10. Article 3 arguably incorporates the principle of dual criminality, as the quote below indicates:

> Extradition shall be *reciprocally* granted for the following crimes or offences. . . .
>
> \* \* \* \* \* \*
>
> Extradition is also to be granted for participation in any of the aforesaid crimes or offences, *provided that such participation be punishable by the laws of both High Contracting Parties.*

Treaty, art. 3 (emphasis added). Also, an argument might be made that Article 9 of the Treaty causes the dual criminality principle to apply:

Article 9

The extradition shall take place only if the evidence be found sufficient, according to the laws of the High Contracting Party applied to, either to justify the committal of the prisoner for trial, in case the crime or offence had been committed in the territory of such High Contracting Party, or to prove that the prisoner is the identical person convicted by the courts of the High Contracting Party who makes the requisition, and that the crime or offence of which he has been convicted is one in respect of which extradition could, at the time of such conviction, have been granted by the High Contracting Party applied to.

Treaty, art 9.

The acts allegedly done by Lahoria and Sood for which they are sought to be extradited are criminal not only under the law of India, but also under the law of the United States or the law of Texas or both. The following table provides cross-references between the charged offenses and the Texas/United States counterparts:

| Offense | Indian Law | 18 U.S.C. | TPC [11] |
|---|---|---|---|
| Abetment | IPC 107, 109 | 2 | 7.01, 7.02 |
| Criminal conspiracy | IPC 120–A, 120–B | 371, 372, 373 | 15.02 |
| Murder | IPC 299, 300, 302 | 1111 | 19.02 |
| Attempt to murder | IPC 307 | 1113 | 15.01, 19.02 |
| Wrongful confinement | IPC 343, 346 | 1201 | 20.02, 20.03, 20.04 |
| Assault or criminal force to deter public servant from discharge of his duty | IPC 353 | 111 | 38.03 |
| Kidnapping for Ransom, etc. | IPC 364–A | 1201 | 20.02, 20.03, 20.04 |
| Kidnapping or abduction with intent secretly and wrongfully to confine persons | IPC 365 | 1201 | 20.02, 20.03, 20.04 |
| Mischief causing damage to the amount of fifty rupees | IPC 427 | 844(i) | 28.03 |
| Mischief by fire or explosive substance with intent to destroy house, etc. ("arson") | IPC 436 | 844(i) | 28.02 |
| Punishment for attempt to cause explosion or for making or keeping explosive with intent to endanger life or property | ESA 4 | 844(i) | 15.01, 28.02 |
| Punishment for making or possessing explosives under suspicious circumstances | ESA 5 | 842(h), (i), (j) | 46.01, 46.05 |
| Forgery for purpose of cheating | IPC 415, 463, 468 | 495, 1341, 1542 | 32.21 |
| Cheating and dishonestly inducing the delivery of property | IPC 420 | 495, 1341, 1542 | 31.01(3)(A), 31.03 |
| Forgery of valuable security, will, etc. | IPC 467 | 495, 1542 | 32.21 |

11. "TPC" denotes Tex.Penal Code Ann. (Vernon 1996).

| | | | |
|---|---|---|---|
| Using as genuine a forged document ("uttering") | IPC 471 | 495, 1542 | 32.21 |

---

## VII. *PROBABLE CAUSE*

### A. *Offenses Charged Against Only Lahoria*

#### 1. *IPC §§ 300 and 302. Murder.*

■ Section 302 of the IPC does not state an offense, but rather the punishment for an offense. However, it is apparent that Lahoria could not be charged under § 302 without also having been charged with murder, in violation of IPC § 300. Therefore, the court proceeds on the premise that Lahoria has indeed been charged with murder.

Murder is defined in the IPC to mean, *inter alia,* doing an act which caused death (i) with the intention of causing death, or (ii) with the intention of causing such bodily injury as defendant knows to be likely to cause death, or (iii) with the intention of causing bodily injury to any person and such injury to be inflicted is sufficient in the ordinary course of nature to cause death, or (iv) with knowledge that the act is so imminently dangerous that it must, in all probability, cause death or such bodily injury as is likely to cause death, and without any excuse for incurring such risk of death or bodily injury. IPC §§ 299, 300.

■ One of the pieces of evidence offered in support of the murder charges is the confessional statement of Davinder Pal Singh ("Davinder"), Lahoria's alleged co-conspirator in the car bombing on September 11, 1993, which is evidence that Lahoria committed murder. Gov't Ex. 1A, at 23–32. Fugitives attempt to rebut this evidence with a document purported to be Davinder's application to retract such confessional statement. Defendant's Ex. 1. The purported application carries little weight, because, unlike Davinder's confessional statement, it lacks appropriate authentication. More importantly, the application merely states that Davinder's prior confessional statement was extracted from him by duress and coercion, and does not state that the statement is untrue.

Hence, the court accepts Davinder's confessional statement as evidence against Lahoria.

■ Fugitives have also argued that the affidavit of Harcharan Singh ("Harcharan") cannot be relied upon because, although it makes reference to an attached photograph of Lahoria, there is no photograph attached to the affidavit. *See* Gov't Ex. 1A, at 17–18. The court does not find that this deficiency requires that Harcharan's entire affidavit be disregarded. Rather, the court finds that, for want of an attached photo, the affidavit simply cannot be relied upon alone as proof of those statements made in paragraph 6 of the affidavit pertaining to Harcharan's identification of Lahoria by his photograph. This is not a problem for movant's case, however, inasmuch as probable cause of Lahoria's identity as a participant in the car bombing is further established by considering this affidavit in conjunction with paragraph 13 of the affidavit of Prit Pal Singh. *See* Gov't Ex. 1A, at 8.

■ Fugitives also challenge the affidavit of Shri Shambhu Singh ("Shambhu"). *See* Gov't Ex. 1A, at 33–34A. They argue that the affidavit fails to identify the individual in the photograph as the individual who parked the car that eventually exploded. The court agrees that the affidavit is deficient is this respect, but notes that identification of Lahoria is effectively established by considering together paragraph 13 of the affidavit of Prit Pal Singh, Gov't Ex. 1A, at 8, and the affidavit of Harcharan, Gov't Ex. 1A, at 17–18. Fugitives also argue that the person who signed the affidavit did so in a language other than in English and that there is nothing in the affidavit to indicate that the affidavit was read to the affiant in a language he understands. This argument is flawed, because the fact that Shambhu signed his name in English on the attached photograph of Lahoria indicates that Shambhu understands English. Finally, fugitives

argue that it is not reasonable to believe that the affiant could have identified the photograph of someone he saw parking a car more than two years earlier. This argument simply goes to the weight the court gives the affidavit.

 The court also notes a slight irregularity in the affidavit of Shri Kuldeep Singh ("Shri"), in that it refers to the attached exhibit 52 and exhibit 55, but makes no reference to the attached exhibits 53 and 54. Gov't Ex. 1A, at 139–43. However, Shri obviously meant to refer to all the attached exhibits, and in fact, at least one other item of evidence makes reference to the affidavit and "exhibit No. 52 to exhibit No. 55." *E.g.,* Affidavit of Prit Pal Singh ¶ 12, Gov't Ex. 1A, at 8. Thus, the weight the court gives to Shri's affidavit is not diminished by its failure to mention all attached exhibits.

 After study of all the evidence, the court finds that there is probable cause to believe that, by his role in the car bombing on September 11, 1996, Lahoria committed the offense of murder. Gov't Ex. 1A, at 2–9, 17, 23–29, 89–99, 100–26, 132–33, 139–42, 144–47, 156–57; *see also id.* at 33–34A.

2. *IPC § 436. Mischief by fire or explosive substance with intent to destroy house, etc. ("arson")*

A person commits the charged offense if he

> commits mischief by fire or any explosive substance, intending to cause, or knowing it to be likely that he will thereby cause, the destruction of any building which is ordinarily used as a place of worship or as a human dwelling or as a place for the custody of property.

IPC § 436. Mischief is defined as follows:

> Whoever with intent to cause, or knowing that he is likely to cause, wrongful loss or damage to the public or to any person, causes the destruction of any property, or any such change in any property or in the situation thereof as destroys or diminishes

its value or utility, or affects it injuriously, commits "mischief."

IPC § 425.

The evidence of Lahoria's role in the car bombing on September 11, 1993, establishes probable cause to believe that the charged offense was committed by Lahoria, and the court so finds. Gov't Ex. 1A, at 2–9, 17, 23–29, 89–99, 100–26, 132–33, 139–42, 144–47, 156–57; *see also id.* at 33–34A.

3. *IPC § 427. Mischief causing damage to the amount of fifty rupees.*

 The charged offense is defined as committing mischief and thereby causing loss or damage to the amount of fifty rupees or upwards. IPC § 427. The definition of mischief, IPC § 425, is stated above.

Movant has not introduced evidence bearing directly on the issue of the value of the damage caused by the car bombing on September 11, 1993. However, the evidence does show that the car in which the bomb was placed was purchased for 30,000 rupees. Harcharan Affidavit ¶ 3, Gov't Ex. 1A, at 17. The evidence also shows that numerous vehicles were destroyed or damaged as a result of the car bombing. Gov't Ex. 1A, at 2, 3, 8, 132–33, 135–36, 139–43. From this evidence, it is readily apparent that more than fifty rupees worth of damage was done by the car bomb. Therefore, the court finds that there is probable cause to believe that Lahoria committed the charged offense.

4. *IPC § 467. Forgery of valuable security, will, etc.*

 A person commits the charged offense if he

> forges a document which purports to be a valuable security or a will, or an authority to adopt a son, or which purports to give authority to any person to make or transfer any valuable security, or to receive the principal, interest or dividends thereon, or to receive or deliver any money, movable property, or valuable security or any document purporting to be an acquittance or receipt acknowledging the payment of money, or in acquittance or receipt for the

delivery of any moveable property or valuable security.

IPC § 467. A person commits forgery if he makes any false document or part of a document with intent to cause damage or injury, to the public or to any person, or to support any claim or title, or to cause any person to part with property, or to enter into any express or implied contract, or with intent to commit fraud or that fraud may be committed.

IPC § 463.

Movant's evidentiary basis for this offense is the evidence of acts allegedly done by Lahoria in pursuit of a passport under an assumed name. Precis of Charges ¶ 14, at 16. Such evidence establishes probable cause to believe that Lahoria forged a birth certificate, a school certificate, a certificate of employment history, and an application for a passport. Gov't Ex. 1B, at 179–92, 194–201. Yet there is no evidence that such documents would constitute the sort of document contemplated by § 467. Therefore, the court cannot, and does not, find probable cause to believe that Lahoria is guilty of the charged offense.

### B. Offenses Charged Against Both Lahoria and Sood

#### 1. IPC § 307. Attempt to murder.

Attempt to murder is defined as "doing any act with such intention or knowledge, and under such circumstances that, if he by that act caused death, he would be guilty of murder." IPC § 307. The offense of murder, IPC § 300, is defined as discussed above.

The evidence proposed by the movant in support of this charge against Lahoria and Sood is the evidence pertaining to the car bombing on September 11, 1993. See Precis of Charges, at 4, 19. The court finds that there is probable cause to believe that, by his role in the car bombing on September 11, 1996, Lahoria committed the offense of attempt to murder. Gov't Ex. 1A, at 2–9, 17, 23–29, 33–34, 89–99, 100–26, 132–33, 139–42, 144–47, 156–57; see also id. at 33–34A. However, because there is no evidence that Sood attempted, or abetted, any murder or was involved with any murder in any way, or

played any role whatsoever in the car bombing, the court cannot, and does not, find probable cause to believe that Sood committed the offense of attempt to murder.

#### 2. ESA § 4. Punishment for attempt to cause explosion or for making or keeping explosives with intent to endanger life or property.

A person is subject to punishment under § 4 of the ESA if he

unlawfully and maliciously—

(a) does any act with intent to cause an explosive substance, or conspires to cause by an explosive substance, an explosion in India of a nature likely to endanger life or to cause serious injury to property; or

(b) makes or has in his possession or under his control any explosive with intent by means thereof to endanger life, or cause serious injury to property in India, or to enable any other by means thereof to endanger life or cause serious injury to property in India.

ESA § 4.

Again, movant relies on the evidence pertaining to the car bombing on September 11, 1993. See Precis of Charges, at 7, 18, 22. The court finds that such evidence establishes probable cause to believe that Lahoria is guilty of the charged offense. Gov't Ex. 1A, at 2–9, 17, 23–29, 89–99, 100–26, 132–33, 139–42, 144–47, 156–57; see also id. at 33–34A. However, the court finds no evidence of Sood's involvement with the car bombing, or with any explosives. Therefore, the court cannot, and does not, find probable cause to believe that Sood is guilty of the charged offense.

#### 3. ESA § 5. Punishment for making or possessing explosives under suspicious circumstances.

A person is subject to punishment under § 5 of the ESA if he

knowingly has in his possession or under his control any explosive substance, under such circumstances as to give rise to a reasonable suspicion that he is not making

it or does not have it in his possession or under his control for a lawful object. ESA § 5.

The evidentiary basis of this charge against Lahoria and Sood is the evidence pertaining to the car bombing on September 11, 1993. *See* Precis of Charges, at 8, 18, 22. The court finds that such evidence establishes probable cause to believe that Lahoria is guilty of the charged offense. Gov't Ex. 1A, at 2–9, 17, 23–29, 89–99, 100–26, 132–33, 139–42, 144–47, 156–57; *see also id.* at 33–34A. However, the court finds no evidence of Sood's involvement with the car bombing, or with any explosives. Therefore, the court cannot, and does not, find probable cause to believe that Sood is guilty of the charged offense.

### 4. *IPC § 364–A. Kidnapping for ransom, etc.*

A person commits the charged offense if he

> kidnaps or abducts any person or keeps a person in detention after such kidnapping or abduction, and threatens to cause death or hurt to such person, or by his conduct gives rise to a reasonable apprehension that such person may be put to death or hurt, or causes hurt or death to such person in order to compel the Government or any other person to do or abstain from doing any act or to pay a ransom.

IPC § 364–A. Kidnapping is defined to mean either conveying a person beyond the limits of India without consent or enticing a minor out of the keeping of the lawful guardian without consent. IPC §§ 359, 360, 361. Abduction is defined to mean compelling, by force or deceit, a person to go from any place. IPC § 362.

One of the items of evidence offered in support of the charged offense is the affidavit of Rajendra Mirdha ("Mirdha"), the person whom Lahoria and Sood allegedly kidnapped for ransom. Gov't Ex. 1B, at 39–48. Fugitives argue that Mirdha's affidavit cannot be used to establish probable cause because exhibits 26 and 27 in Government's Exhibit 1B show that Mirdha is not fluent in English, yet his affidavit is in English and there is nothing in the affidavit to indicate that it was read back to him in a language he understands. However, the court disagrees that exhibits 26 and 27, which are purportedly letters written in English by Mirdha, show that Mirdha is not fluent in English. *See* Gov't Ex. 1B at 100, 101. Therefore, the court does not disregard or discount Mirdha's affidavit.

The evidence presented by movant establishes probable cause that both Lahoria and Sood committed each element of the charged offense by virtue of their abduction and detention of Mirdha; and, the court finds that there is probable cause to believe that each of them committed the offense. Gov't Ex. 1B, at 33–36, 39–42, 102–03, 112–13, 148; *see also id.* at 86–87, 100–01, 125–33, 163–65, 213–14, 216–17, 220–21.

### 5. *IPC § 365. Kidnapping or abduction with intent secretly and wrongfully to confine persons.*

■ A person commits the charged offense if he "kidnaps or abducts any person with intent to cause that person to be secretly and wrongfully confined." IPC § 365. The definitions of kidnapping and abduction are the same as discussed above.

The evidence presented by movant establishes probable cause that Lahoria committed each element of the charged offense; and, the court finds that there is probable cause to believe that he committed the offense. Gov't Ex. 1B, at 33–36, 39–42, 102–03, 112–13, 148; *see also id.* at 86–87, 100–01, 125–33, 163–65, 213–14, 216–17, 220–21.

However, the evidence does not establish probable cause that Sood committed the charged offense, because the evidence shows only that Sood detained Mirdha, and does not show that she participated in his actual abduction. Indeed, Mirdha's affidavit indicates he did not see or have any contact with Sood until several days after he was abducted. Gov't Ex. 1B, at 39–42. The court is aware that the IPC provides that a person who has abetted an offense shall be punished for that offense. IPC § 109. However, the evidence does not suggest that Sood played any role in the abduction of Mirdha from his home, and instead indicates that she simply was active

in keeping Mirdha confined after he was abducted. Therefore, the court finds that Sood may not be extradited for the offense of kidnapping or abduction with intent secretly and wrongfully to confine persons.

### 6. IPC § 346. Wrongful confinement in secret.

A person commits the charged offense if he

> wrongfully confines any person in such manner as to indicate an intention that the confinement of such person may not be known to any person interested in the person so confined, or to any public servant, or that the place of such confinement may not be known to or discovered by any such person or public servant as hereinbefore mentioned.

IPC § 346. A person commits the offense of wrongful confinement if he "wrongfully restrains any person in such a manner as to prevent that person from proceeding beyond certain circumscribing limits." IPC § 340. And, a person commits the offense of wrongful restraint if he "voluntarily obstructs any person so as to prevent that person from proceeding in any direction in which that person has a right to proceed." IPC § 339.

The evidence of Lahoria's and Sood's roles in the abduction and detention of Mirdha establishes probable cause that they committed each element of the offense of wrongful confinement in secret; and, the court finds that there is probable cause to believe that each of them committed this offense. Gov't Ex. 1B, at 33–36, 39–42, 102–03, 112–13, 148; see also id. at 86–87, 100–01, 125–33, 163–65, 213–14, 216–17, 220–21.

### 7. IPC § 343. Wrongful confinement for three or more days.

A person commits the charged offense if he "wrongfully confines any person for three days, or more." IPC § 343. The definitions of wrongful confinement and wrongful restraint are as discussed above.

The evidence of Lahoria's and Sood's roles in the abduction and detention of Mirdha establishes probable cause that they committed each element of the offense of wrongful confinement for three or more days; and, the court finds that there is probable cause to believe that each of them committed the offense. Gov't Ex. 1B, at 33–36, 39–42, 102–03, 112–13, 148; see also id. at 86–87, 100–01, 125–33, 163–65, 213–14, 216–17, 220–21.

### 8. IPC § 468. Forgery for purpose of cheating.

A person commits the charged offense if he "commits forgery, intending that the document forged shall be used for the purpose of cheating." IPC § 468. The offense of forgery, IPC § 463, is described above. And, a person commits the offense of cheating if he,

> by deceiving any person, fraudulently or dishonestly induces the person so deceived to deliver any property to any person, or to consent that any person shall retain any property, or intentionally induces the person so deceived to do or omit to do anything which he would not do or omit if he were not so deceived, and which act or omission causes or is likely to cause damage or harm to that person in body, mind, reputation or property.

IPC § 415.

Movant's evidentiary basis for this offense is the evidence of acts allegedly done by Lahoria and Sood in pursuit of passports under assumed names. Precis of Charges ¶ 12, at 13–15, ¶ 4, at 21. The court finds that there is probable cause to believe that Lahoria and Sood each committed this offense. Gov't Ex. 1B, at 179–92, 194–201; Affidavit of Satya Prakash Khadgawat ¶¶ 33–37, Gov't Ex. 1B.

### 9. IPC § 471. Using as genuine a forged document. ("uttering")

A person commits the offense of using as genuine a forged document if he "fraudulently or dishonestly uses as genuine any document which he knows or has reason to believe to be a forged document." IPC § 471. A "forged document" is a false document made wholly or in part by forgery. IPC § 470. The offense of forgery, IPC § 463, is described above.

Movant's evidentiary basis for this offense is the evidence of acts allegedly done by Lahoria and Sood in pursuit of passports under assumed names. Precis of Charges, ¶ 15, at 16–17, ¶ 11, at 22. The court finds that there is probable cause to believe that Lahoria and Sood each committed this offense. Gov't Ex. 1B, at 179–92, 194–201; Affidavit of Satya Prakash Khadgawat ¶¶ 33–37, Gov't Ex. 1B.

10. *IPC § 420. Cheating and dishonestly inducing delivery of property.*

A person commits the charged offense if he

cheats and thereby dishonestly induces the person deceived to deliver any property to any person, or to make, alter or destroy the whole or any part of a valuable security, or anything which is signed or sealed, and which is capable of being converted into a valuable security.

IPC § 420. The offense of cheating, IPC § 415, is described above.

The court finds that the evidence of fugitives' acts which led to the issuance to them of passports under assumed names establishes probable cause to believe that fugitives committed the offense of cheating and dishonestly inducing delivery of property. Gov't Ex. 1B, at 179–92, 194–201; Affidavit of Satya Prakash Khadgawat ¶¶ 33–37, Gov't Ex. 1B.

11. *IPC §§ 120–A and 120–B. Criminal conspiracy.*

Section 120–B of the IPC does not state an offense, but rather the punishment for an offense. However, it is apparent that, by charging fugitives under § 120–B, the Indian government has alleged that they are guilty of criminal conspiracy, in violation of IPC § 120–A.

The offense of criminal conspiracy is defined as follows:

When two or more persons agree to do, or cause to be done,—

(1) an illegal act, or

(2) an act which is not illegal by illegal means, such an agreement is designated a criminal conspiracy.

Provided that no agreement except an agreement to commit an offence shall amount to a criminal conspiracy unless some act besides the agreement is done by one or more parties to such agreement in pursuance thereof.

IPC § 120–A.

According to movant's precis of charges, the evidentiary basis of the criminal conspiracy charges is the evidence pertaining to the murder charges against Lahoria. Precis of Charges, at 5, 10, 21. As discussed above, the court does not find probable cause to believe that Sood committed the alleged murders, or attempted them, or abetted them, or was involved with them in any way. Therefore, the court cannot, and does not, find probable cause to believe that she committed the criminal conspiracy in relation to the September 11, 1993, car bombing. However, the court does find that the evidence, which was discussed in greater detail above in connection with the murder charge, establishes probable cause to believe that Lahoria committed criminal conspiracy in many respects in relation to the September 11, 1993, car bombing and the abduction and confinement of Mirdha.

Although movant did not give Sood's involvement in the abduction and detention of Mirdha as the evidentiary basis of the criminal conspiracy charge against Sood, the court finds the evidence sufficient to establish probable cause that, by such involvement, she committed each element of the offense of criminal conspiracy. Gov't Ex. 1B, at 33–36, 39–42, 102–03, 112–13, 148; *see also id.* at 86–87, 100–01, 125–33, 163–65, 213, 216, 220. Thus, the court finds that there is probable cause to believe she engaged in such a criminal conspiracy.

C. *Offenses Charged Against Only Sood*

1. *IPC § 353. Assault or criminal force to deter a public servant from discharge of his duty.*[12]

A person commits the charged offense if he

---

12. As noted previously, this offense is listed in the complaint as a violation of IPC § 363, but the

assaults or uses criminal force to any person being a public servant in the execution of his duty as such public servant, or with intent to prevent or deter that person from discharging his duty as such public servant, or in consequence of anything done or attempted to be done by such person in the lawful discharge of his duty as such public servant.

IPC § 353. Assault is defined to mean the making of "any gesture, or any preparation intending or knowing it to be likely that such gesture or preparation will cause any person present to apprehend that he who makes that gesture or preparation is about to use criminal force to that person." IPC § 351. And, a person commits the offense of criminal force if he

intentionally uses force to any person, without that person's consent, in order to the committing of any offence, or intending by the use of such force to cause, or knowing it to be likely that by the use of such force he will cause injury, fear or annoyance to the person to whom the force is used.

IPC § 350.

The court finds that the evidence establishes probable cause to believe that Sood committed the charged offense. Gov't Ex. 1B, at 34–38, 41–46, 86–91, 149–52; Affidavit of Satya Prakash Khadgawat ¶¶ 9, 15, 22, 23, 30, Gov't Ex. 1B.

### 2. *IPC §§ 107 and 109. Punishment of abetment if the act abetted is committed in consequence and where no express provision is made for its punishment.*

■ Section 109 of the IPC does not state an offense, but rather the punishment for an offense. However, it is apparent that, by charging Sood under § 109, the Indian government has alleged that she is guilty of abetment, in violation of IPC § 107.

Movant does not specify what offense Sood is alleged to have abetted. Indeed, movant's precis of charges fails to make any mention of the charge of abetment against Sood. *See* Precis of Charges, at 19–22. As a result, the

court understands from other language in the complaint and from examination of the IPC that

court cannot, and does not, find probable cause to believe that she committed this offense.

### VIII. *TREATY EXCEPTIONS & FUGITIVES' DEFENSES*

#### A. *Political Offense Exception*

■ The Treaty contains an exception for political offenses:

A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime of offence of a political character.

Treaty, art. 6. In determining whether fugitives may be extradited for the charged offenses, the court must consider whether any of the offenses are nonextraditable because they fall within the political offense exception. *Quinn*, 783 F.2d at 787. The Fifth Circuit has provided guidance on the political offense issue:

This circuit defines a political offense under extradition treaties as an offense committed in the course of and incidental to a violent political disturbance, such as war, revolution and rebellion. An offense is not of a political character simply because it was politically motivated.

*Escobedo*, 623 F.2d at 1104 (citations omitted).

Fugitives assert that their extradition is barred by the Treaty's political offense exception because the offenses that are the subject of the extradition request are of a political character and because the Indian government's request for fugitives' extradition has been made with a view to punish them for offenses that are of a political character. Fugitives' Pre-hearing Memorandum at 8–10. They argue that the Sikh struggle for secession of the Punjab province from India, and for the creation of an independent nation to be named Khalistan, constitutes a violent political disturbance within the mean-

this offense is properly understood to be a violation of IPC § 353.

ing of the political offense exception. *Id.* They also allege that the abduction of Mirdha was politically motivated to advance the secession of the Punjab province and the creation of Khalistan, *id.*, at 8–9 n. 5, and that, from the early 1980's, Lahoria and Sood have been active in the Khalistan movement, *id.*, at 10 n. 6.

In support of their contention that the Sikh struggle for liberation from India is a violent political disturbance, such as a war, revolution, or rebellion, fugitives have presented the opinions of experts on the topic of the Sikh's political struggles in the Punjab province of India. Fugitives' Ex. 3. They also have cited to two political asylum cases, in which are recounted the sorts of repeated, brutal torture suffered by Sikhs involved in the struggle. Fugitives' Pre-hearing Memorandum at 10 (citing *Singh v. Ilchert*, 63 F.3d 1501 (9th Cir.1995); *Singh v. Moschorak*, 53 F.3d 1031 (9th Cir.1995)).[13]

Whether the campaign by an element of the Sikh community for separation from India is or is not a violent political disturbance for purposes of the political offense exception, the evidence does not persuade the court that the acts allegedly taken by Lahoria and Sood were committed in the course of and incidental to such struggle. Certainly there is some evidence that the abduction of Mirdha was politically motivated. Gov't Ex. 1B, at 40, 102–03; Affidavit of Satya Prakash Khadgawat ¶ 20, Gov't Ex. 1B. And, there is some evidence that the car bombing was politically motivated. Gov't Ex. 1A, at 23–21. However, the fact that such offenses were politically motivated does not alone bring them within the political offense exception. Therefore, the court cannot, and does not, find that fugitives' extradition is barred by the political offense exception.

### B. *Location at Which Fugitives Were Found*

Fugitives argue that, because they were found in Minneapolis, Minnesota, 18 U.S.C. § 3184 does not afford the court jurisdiction to conduct these extradition proceedings.

They rely on the following language in the statute:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States ... may, upon complaint made under oath, charging any person *found within his jurisdiction*, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged....

18 U.S.C. § 3184 (emphasis added).

Fugitives' argument is not borne out by the facts. The complaint clearly states that Lahoria and Sood "may be found within the jurisdiction of this court at the Tarrant County Jail, 100 Lamar Street, Fort Worth, Texas." Complaint ¶ 7, at 3. Moreover, fugitives' argument is at variance with stipulations of the parties. *See* Joint Prehearing Report to the Court, ¶¶ b. and c at 2. Therefore, the court is not without jurisdiction to conduct these extradition proceedings.

### C. *Two Month Provision*

■ Fugitives assert that they are entitled to be set at liberty because the Indian government failed to produce sufficient evidence to warrant their extradition to India within two months of their apprehension. They rely on the following Treaty provision:

> If sufficient evidence for the extradition be not produced within two months from the date of the apprehension of the fugitive, or within such further time as the High Contracting Party applied to, or the proper tribunal of such High Contracting Party, shall direct, the fugitive shall be set at liberty.

Treaty, art. 11. They claim that they were arrested by agents of the Federal Bureau of Investigation ("FBI") and officers of the Immigration and Naturalization Service ("INS") in August of 1995, and that the Indian government did not produce any evidence in

---

13. The court notes that, as exhibits to prior pleadings, fugitives have submitted copies of papers and books detailing the Sikh struggle. Sood's Motion for Bail, Ex. 13; Fugitives' Motion to Extend Time for Filing Motions, Ex. 6, 7. However, those documents were not offered as exhibits at the extradition hearing.

support of its request for fugitives' extradition until March of 1996, eight months following fugitives' apprehension.

Fugitives' assertion is flawed because, for purposes of the Treaty, the "date of the apprehension" is the date they were arrested for the sole purpose of extradition. *In re Chan Kam–Shu*, 477 F.2d 333, 339–40 (5th Cir.), *cert. denied*, 414 U.S. 847, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973). Movant submitted sufficient evidence for the extradition on the same date the complaint was filed, and before fugitives were arrested for the purpose of extradition. Therefore, the requirement stated in article 11 of the Treaty is satisfied.

### D. *Constitutionality of Extradition Statute*

■ Fugitives assert that the extradition statute governing these proceedings is unconstitutional because it violates the separation of powers doctrine. The undersigned judge concludes that, acting in the capacity contemplated by 18 U.S.C. § 3184, he should not address challenges to the constitutionality of the extradition statute. As a result, the court does not consider the constitutionality issues raised by fugitives.

### E. *Doctrine of Specialty & TADA*

■ Fugitives assert that their extradition to India would violate the doctrine of specialty because, if they are returned to India, Indian law precludes the government of India from trying them for the offenses for which their extradition is sought without first trying them for other offenses for which they are charged but for which their extradition is not sought. They rely on the following Treaty provision:

> A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High Contracting party to whom the surrender has been made for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place....

Treaty, art. 7. They allege that the government of India has accused fugitives of violations of the Terrorist and Disruptive Activities (Prevention) Act, 1987 ("TADA"), although the government of India has not sought their extradition for such violations. They argue that TADA mandates that fugitives be tried for their TADA violations before they can be tried for the offenses for which their extradition is sought. Fugitives' Pre–Hearing Memorandum at 6–7. Specifically, TADA provides as follows:

> The trial under this Act of any offence by a Designated Court shall have precedence over the trial of any other case against the accused in any other court ... and shall be concluded in preference to the trial of such other case and accordingly the trial of such other case shall remain in abeyance.

*Id.* Ex. 2, at 22.

The flaw in fugitives' argument is that the precedence established in TADA applies only if fugitives are to be tried for TADA violations. Yet, under the doctrine of specialty, the government of India can try fugitives only for offenses for which they are extradited, and cannot try fugitives for TADA violations. Thus, the precedence provision of TADA would have no effect as to fugitives.

### IX. *ORDER*

For the foregoing reasons:

A. The court is making a certification of the kind contemplated by 18 U.S.C. § 3184 as to Lahoria for the following offenses:

1. IPC §§ 120–A and 120–B. Criminal conspiracy and punishment of criminal conspiracy;

2. IPC §§ 300 and 302. Murder and punishment for murder;

3. IPC § 307. Attempt to murder;

4. IPC § 343. Wrongful confinement for three or more days;

5. IPC § 346. Wrongful confinement in secret;

6. IPC § 364–A. Kidnapping for ransom, etc.;

7. IPC § 365. Kidnapping or abducting with intent secretly and wrongfully to confine person;

8. IPC § 420. Cheating and dishonestly inducing delivery of property;

9. IPC § 427. Mischief causing damage to the amount of fifty rupees;

10. IPC § 436. Mischief by fire or explosive substance with intent to destroy house, etc.;

11. IPC § 468. Forgery for purpose of cheating;

12. IPC § 471. Using as genuine a forged document;

13. ESA § 4. Punishment for attempt to cause explosion or for making or keeping explosive with intent to endanger life or property; and

14. ESA § 5. Punishment for making or possessing explosives under suspicious circumstances.

B. The court is making a certification of the kind contemplated by 18 U.S.C. § 3184 as to Sood for the following offenses:

1. IPC § 364–A. Kidnapping for ransom, etc.;

2. IPC § 346. Wrongful confinement in secret;

3. IPC § 343. Wrongful confinement for three or more days;

4. IPC § 468. Forgery for purpose of cheating;

5. IPC § 471. Using as genuine a forged document;

6. IPC §§ 120–A and 120–B. Criminal conspiracy and punishment of criminal conspiracy;

7. IPC § 420. Cheating and dishonestly inducing delivery of property; and,

8. IPC § 353. Assault or criminal force to deter a public servant from discharge of his duty.

### FINAL JUDGMENT OF CERTIFICATION OF EXTRADITABILITY

Consistent with the memorandum opinion and order signed in the above-styled and numbered proceeding on the date of the signing of this Final Judgment of Certification of Extraditability:

The undersigned judge hereby certifies that he deems the evidence sufficient to sustain under the Extradition Treaty between the United States and the United Kingdom of Great Britain and Northern Ireland of December 22, 1931 (TS 849; 47 Stat. 2122) (hereinafter "Treaty") the following charges by the government of the Republic of India against Daya Singh Lahoria (a/k/a Daya Singh Sandhu) (hereinafter "Lahoria") and Suman Sood (a/k/a Kamaljeet Kaur Sandhu) (hereinafter "Sood"):

A. As to Lahoria:

1. Criminal conspiracy and punishment of criminal conspiracy (Indian Penal Code (hereinafter "IPC") §§ 120–A and 120–B);

2. Murder and punishment for murder (IPC §§ 300 and 302);

3. Attempt to murder (IPC § 307);

4. Wrongful confinement for three or more days (IPC § 343);

5. Wrongful confinement in secret (IPC § 346);

6. Kidnapping for ransom, etc. (IPC § 364–A);

7. Kidnapping or abducting with intent secretly and wrongfully to confine person (IPC § 365);

8. Cheating and dishonestly inducing delivery of property (IPC § 420);

9. Mischief causing damage to the amount of fifty rupees (IPC § 427);

10. Mischief by fire or explosive substance with intent to destroy house, etc. (IPC § 436);

11. Forgery for purpose of cheating (IPC § 468);

12. Using as genuine a forged document (IPC § 471);

13. Punishment for attempt to cause explosion or for making or keeping explosive with intent to endanger life or property (Explosive Substances Act (hereinafter "ESA") § 4); and

14. Punishment for making or possessing explosives under suspicious circumstances (ESA § 5).

B. As to Sood:

1. Kidnapping for ransom, etc. (IPC § 364–A);

2. Wrongful confinement in secret (IPC § 346);

3. Wrongful confinement for three or more days (IPC § 343);

4. Forgery for purpose of cheating (IPC § 468);

5. Using as genuine a forged document (IPC § 471);

6. Criminal conspiracy and punishment of criminal conspiracy (IPC §§ 120–A and 120–B);

7. Cheating and dishonestly inducing delivery of property (IPC § 420); and

8. Assault or criminal force to deter a public servant from discharge of his duty (IPC § 353).

The undersigned directs that the Clerk transmit to the Secretary of State of the United States (a) a certified copy of this Final Judgment of Certification of Extraditability, (b) a copy of all the evidence received by the undersigned and testimony taken before the undersigned in the above-styled and numbered proceeding (the entire records of the hearing held June 4, 1996, in such proceeding), (c) a certified copy of the memorandum opinion and order signed in such proceeding on the date of the signing of this Final Judgment of Certification of Extraditability, and (d) a certified copy of the complaint by which such proceeding was instituted.

The undersigned further directs that a warrant may issue upon the requisition of the proper authorities of the government of the Republic of India for the surrender of Lahoria and Sood, according to the stipulations of the Treaty.

The undersigned further directs that Lahoria and Sood remain in custody until such surrender shall be made.