**Hardev SINGH, Petitioner–Appellant,**

**v.**

**Robert MOSCHORAK, District Director, United States Immigration and Naturalization Service; Immigration and Naturalization Service, Respondents–Appellees.**

No. 94–55400.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1995.

Decided April 28, 1995.

Robert B. Jobe, Jobe & Melrod, San Francisco, CA (argued), and Daniel Wolf, Hughes, Hubbard and Reed, Washington, DC, for petitioner-appellant.

Leon W. Weidman, Asst. U.S. Atty., John B. Bartos, Sp. Asst., Los Angeles, CA, for respondents-appellees.

Before: FERGUSON, BEEZER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Hardev Singh appeals a decision of the district court remanding his case to the Board of Immigration Appeals (the Board). We remand to the district court.

## PROCEEDINGS

Singh entered the United States using an alias and was therefore excludable under 8 U.S.C. § 1182(a)(6)(C). He did not contest his excludability but sought asylum under 8 U.S.C. § 1158(a) and withholding of deportation under 8 U.S.C. § 1253(h). At proceedings initiated by the Immigration and Naturalization Service (the Service) before Immigration Judge Thomas Fong, Singh testified as follows:

He was born in 1959 and was a resident of the Amristar district, Punjab, India. A Sikh, he had been since 1977 a member of the All India Sikh Student Federation (the Student Federation). His father was the treasurer of Akali Dal, a political party of Sikhs. According to Singh, the elected representatives who were members of this party were not permitted to take up their elected positions because as Sikhs they carried small swords from which, on religious grounds, they could not separate themselves.

On June 7, 1984 the Indian army engaged in conflict with Sikhs at the Sikhs' Golden Temple in Amristar; many Sikhs were killed; and the Golden Temple was seriously damaged. By loudspeaker Singh summoned the people of his village to go with him to see the Golden Temple. He was arrested by the army, beaten, blindfolded, a tin box was put on his head, and he was put in a well for four days; he became unconscious. For the next 20 days he was blindfolded and made to stand in the sun and questioned by officials. He was released on August 2 and resumed his work for the Student Federation.

In June 1985 he was carrying posters to another town to commemorate "the black

day" of the previous year's attack on the Golden Temple; the posters instructed Sikhs to wear black in memory of the day. He was picked up by India Reserve Police and security forces, taken to Amristar, beaten on his feet for 20 minutes, and held for 10 days. His brother-in-law, who was the president of the Student Federation, died under interrogation by the reserve police.

In June 1989 Singh was attending a conference in Amristar commemorating members of the Student Federation who had been killed by the police. Permission to hold the conference had been given by the district commissioner. Singh was arrested, beaten and kicked and his legs pulled apart, racking his muscles; he became unconscious. He was threatened with death unless he left the Student Federation. After a second day of treatment in this fashion he had lumps all over his body and was unable to walk. The third day he was beaten and hung upside down. The following day melted wax was poured on his feet, causing blisters. On the next day the police trampled on the blisters and kicked him in the face; his front teeth were broken. He was again hung upside down and was drenched in blood. He was unable to eat because his face was swollen. He was given no medical aid. After two and one half months in custody, he was released after his family paid 50,000 rupees to the police. On release from custody Singh entered the hospital for two weeks where he was treated for injury to his feet, kidneys and liver. During this period both his mother and his wife were interrogated about him and beaten. His brother was also arrested and his whereabouts since his arrest are unknown.

On July 20, 1992 Singh was again caught carrying posters on behalf of a strike on July 22 to protest the disappearance of Sikhs. He was again beaten and his legs were again racked; he lost consciousness. The second day he was treated in the same way. On the third day he was subjected to electric shock and his arms were racked. He was told that he must leave the Student Federation.

After this episode, he decided to leave India. His father, a farmer, sold his tractor in order to finance his trip to Nepal and then to the United States.

After hearing this testimony the Immigration Judge denied Singh's asylum and the withholding of deportation. Singh appealed to the Board, which per curiam affirmed the decision of the Immigration Judge. The basis of the Board's decision was twofold. First, there was "no persuasive evidence that the mistreatment suffered by the applicant at the hands of security officials was on account of his political opinion or the mere fact that he was a Sikh. He did not show that the action extended beyond an investigation of, and reaction against, those thought—rightly or wrongly—to be militants seeking the violent overthrow of the government." Second, Singh had failed to show that he faced a threat of prosecution in any other part of India except the Punjab; the Board noted the advisory opinion of the State Department that large numbers of Sikhs led peaceful lives in other parts of India. In a separate opinion setting out the situation of the Sikhs in India, Board Member Heilman concurred.

Singh then brought this action of habeas corpus in the district court. The magistrate noted that the Board had accepted Singh's testimony as true and so he would accept it as true. He followed the usual rule that the Board's factual determinations must be accepted unless there is a lack of substantial evidence to support them. *INS v. Elias–Zacharias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992); *Castillo v. INS,* 951 F.2d 1117, 1120 (9th Cir.1991). The magistrate held that the Board's finding that Singh had not been persecuted for his political opinion was not supported by substantial evidence, observing that the Board failed to distinguish efforts to arrest and persecute individuals suspected of criminal activity from punishment without judicial process. No doubt, the magistrate must have had in mind the occasion where, without any judicial process, Singh was arrested, imprisoned, and tortured for attending a conference to be held by the permission of the district commissioner. The magistrate concluded: "Consequently, petitioner has established asylum eligibility on the basis of past persecution

and is presumed to have a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1)(i)."

The magistrate also addressed the alternative ground of the Board's decision and noted that the advisory opinion from the State Department did not "address the issue of whether this petitioner can live safely in another region of India nor does it address this issue of whether conditions have changed in India." The magistrate recommended that the case should be remanded to the Board so that the Board could consider both questions. The district court adopted the magistrate's report and recommendation and remanded to the Board "for further proceedings consistent with this report and recommendation."

Singh appeals.

## ANALYSIS

Under the relevant statute the Attorney General has established a procedure "for an alien physically present in the United States or at a land border or port of entry" and in his discretion may grant the alien asylum "if the Attorney General determines that such alien is a refugee within the meaning of § 1101(a)(42)(A) of this title." 8 U.S.C. § 1158. Under § 1101(a)(42)(A) the term refugee means "any person who is outside any country of such person's nationality" and who is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of ... political opinion...."

■ The statute controls the case. The district court determined that Singh was the victim of actual past persecution on the basis of political opinion. The Service does not challenge this finding, although, surprisingly, the Service urges that his returning to his political work for the Student Federation shows that he was not afraid of the police. The Service fails to distinguish fortitude in the face of danger from absence of fear. It is evident from his application for asylum that Singh is unwilling to avail himself of the protection of India owing to his persecution by India. Consequently, he qualifies as a refugee as defined by § 1101(a)(42)(A). *Desir v. Ilchert*, 840 F.2d 723, 739 (9th Cir. 1988).

■ Adopting the recommendation of the magistrate, the district court remanded to the Board to determine if Singh can "live safely in another region of India" distinct from his home. The district court apparently believed that Singh would not qualify for asylum if his persecution by India for political opinion was confined to the Punjab. Such is not the law. Singh's contention is not that Sikhs in general or Sikhs in the Punjab are persecuted, but that he, a particular Sikh, has been persecuted for his political opinion; and so he has. That thousands of Sikhs live peacefully in some parts of India has no bearing on his case.

■ We have recognized that where there was a danger of persecution in a single village from guerrillas who knew the petitioner, and no showing of such danger elsewhere in the country, the petitioner failed to establish eligibility for asylum. *Quintanilla–Ticas v. INS*, 783 F.2d 955, 957 (9th Cir.1986); *Diaz–Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir.1986). The Service argues by analogy that these cases control this case. But where the persecution is by the government of the nation no such distinction may be taken. The basic definitional statute defines a refugee in terms of a person "who is outside the country of such person's nationality." 8 U.S.C. § 1101(a)(42)(A). The regulations as to establishing refugee status speak consistently in terms of "general conditions in the applicant's country of nationality." 8 C.F.R. § 208.13(a); persecution "in his country of nationality" and unwillingness to return to "that country" *id.* § 208.13(b)(1); changed "conditions in the applicant's country of nationality" *id.* § 208.13(b)(1)(i); and compelling reasons not to return to "his country of nationality" *id.* § 208.13(b)(1)(ii). It has never been thought that there are safe places within a nation when it is the nation's government that has engaged in the acts of punishing opinion that have driven the victim to leave the country.

Singh has established that he is unwilling to return to India due to past persecution by the national government of that country on

the basis of his race or political opinion. He is a refugee eligible for asylum under 8 U.S.C. §§ 1101(a)(42) and 1158. The district court was, of course, right in remanding to the Board for the exercise of the Attorney General's discretion under 8 U.S.C. § 1158(a). This case is remanded to the district court with instructions to remand to the Attorney General for proceedings consistent with this opinion.