110 F.3d 72
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Vassil Nikolov VASSILEV; Tzvetanka Gantchev Vassilev;
Nikolay Vassilev Nikolov; Ganka Vassilev Nikolov,
Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70631.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1996.
Decided March 19, 1997.
 
 1
 Before: BROWNING, THOMPSON, and THOMAS, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 As a minor child, Ganka may be granted the same status of her father. See 8 U.S.C. § 1158(c). As Vassil's husband, Tzvetanka may be granted the same status as Vassil. See id. We consider the application of Nikolay Vassilev Nikolov, the adult son of Vassil and Tzvetanka, separately.
 
 I. Political Asylum
 
 4
 An applicant for asylum bears the burden of showing that he or she is a refugee. 8 C.F.R. § 208.13(a). However, if an applicant shows past persecution, "fear of future persecution is presumed, and the burden shifts to the INS to show, by a preponderance of the evidence, that 'since the time the persecution occurred conditions in the applicant's country ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if ... [the applicant] were to return.' " Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995) (quoting 8 C.F.R. § 208.13(b)(1)(i)).
 
 A. Past Persecution
 
 5
 The IJ found the Vassilevs' testimony regarding past persecution was not credible because the Vassilevs were well-educated and had maintained a good life, and Vassil was permitted to travel. The reasons given by the IJ did not bear a legitimate nexus to the negative credibility finding. See Aguilera-Cota v. INS, 914 F.2d 1375, 1381 (9th Cir.1990). The fact that an applicant is well-to-do and well-educated does not indicate his testimony regarding past persecution is false. In many countries, particularly formerly communist countries, the wealthy are considered the enemy of the government and targeted for harassment and persecution. Vassil testified his family was stripped of its land and his father was arrested many times for not supporting the communists.
 
 
 6
 Nor did Vassil's ability to travel suggest his testimony that he was persecuted was false. Vassil's passport was not an international passport. It was issued only to enable him to work in a single country, Libya. It was seized upon his arrival in Libya and was returned to him at the airport only when he needed to travel. The communists forced Vassil to return to Bulgaria for participating in anti-communist activities and seized this passport while they detained him for questioning. Vassil bribed a member of the people's militia to obtain a new passport to escape persecution and used this passport to go to Turkey in search of a place of asylum, later obtaining a visa to travel to the United States from the American embassy in the capital of Bulgaria. As we pointed out in Garcia-Ramos v. INS, 775 F.2d 1370, 1374 (9th Cir.1985), when an applicant "obtained his passport by paying a bribe to a government official: his ability to obtain a passport may have little or no relevance to his claim of possible persecution."
 
 
 7
 Since the IJ's credibility determination was not supported by substantial evidence, and Vassilevs' testimony is not challenged as unreliable on any other ground, a reasonable factfinder would be compelled to find that Vassil suffered past persecution. See Aguilera-Cota, 914 F.2d at 1383.
 
 
 8
 The IJ concluded the Vassilevs suffered no more than most Bulgarians. However, the fact that many other Bulgarians suffered persecution for their anti-communist activities supports, rather than undermines, Vassil's argument that he was persecuted for such activities. Vassil testified that he is an active anti-communist; as such "he was part of the subgroup of anti-communists who were active opponents of the Communist regime--and who were, as a result, subject to a greater danger of persecution than were other anti-communists." Kotasz v. INS, 31 F.3d 847, 854 (9th Cir.1994). "[T]he existence of a group of persons similarly situated to [the applicant] in some ways strengthens his claim by establishing that his case was part of a larger government tendency to detain and harass, rather than an isolated event." Id.
 
 
 9
 After the communists were allegedly no longer in power, Vassil was arrested, interrogated, beaten, pistol-whipped and told he would be shot for high treason because of his anti-communist beliefs. Prior to this encounter, he was arrested many times and threatened with death or imprisonment. His travel was severely restricted by repeated confiscation of his passport. Persecution is "the infliction of suffering or harm upon those who differ ... in a way regarded as offensive." Sagermark v. INS, 767 F.2d 645, 649 (9th Cir.1985) (quoting Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969)). Because "[i]t is not possible to characterize [the Bulgarian government's actions] as an inoffensive infliction of suffering or harm," Montoya-Ulloa v. INS, 79 F.3d 930, 931 (9th Cir.1996), Vassil established that he had suffered past persecution.
 
 B. Well-Founded Fear of Future Persecution
 
 10
 Vassil was therefore entitled to a presumption of a well-founded fear of future persecution. See Singh, 69 F.3d at 378; 8 C.F.R. § 208.13(b)(1)(i). The INS failed to rebut this presumption by a preponderance of the evidence. Vassil therefore qualifies for asylum.
 
 
 11
 In rejecting Vassil's application for asylum, the immigration judge mistakenly relied upon a State Department advisory opinion. Such an opinion is irrelevant when an individual has experienced actual persecution by the government. See Singh, 69 F.3d at 380 (citing Singh v. Ilchert, 63 F.3d 1501, 1511-12 (9th Cir.1995)). The IJ noted that the State Department advisory opinion suggested that conditions in Bulgaria had so altered that the presumption of future persecution was no longer appropriate. A State Department advisory opinion does not negate the regulatory presumption of well-founded fear of persecution that attaches as a result of past persecution.
 
 
 12
 The report's conclusion that "former political emigrants were granted passports and have returned to visit or live tranquilly in that country" is not determinative. "Where an applicant has shown past persecution, evidence that individuals can live peacefully in some parts of applicant's home country has no bearing on the applicant's eligibility for asylum or withholding of deportation." Singh, 69 F.3d at 380 (citing Singh v. Moschorak, 53 F.3d 1031, 1034 (9th Cir.1995)).
 
 
 13
 The advisory opinion stated "most plausible mistreatment is now local or personalized rather than national in origin and can be averted by recourse to internal relocation or the nascent democratic legal structures rather than to seeking political asylum abroad." The Vassilevs testified that they have been singled out by the government for mistreatment because of Vassil's anti-communist activities--the very type of "personalized" mistreatment the State Department indicated still occurred.
 
 
 14
 The Vassilevs demonstrated a well-founded fear of individual persecution. In addition to the whipping, numerous arrests, detentions and harassments of Vassil, Tzvetanka testified her parents' home was broken into and her mother received threats that Tzvetanka would be killed.
 
 
 15
 II. Withholding of Deportation 8 U.S.C. § 1253(h)
 
 
 16
 The evidence before the IJ also demonstrated that Vassil was entitled to withholding of deportation because his "life or freedom would be threatened" if he is returned to Bulgaria. 8 U.S.C. § 1253(h). Vassil has shown he has a "clear probability of persecution." See INS v. Stevic, 467 U.S. 407, 430 (1984).
 
 
 17
 If an applicant "suffered persecution in the past such that his life or freedom was threatened in the proposed country of deportation ..., it shall be presumed that his life or freedom would be threatened on return to that country." 8 C.F.R. § 208.16(b)(2) (cited in Singh v. INS, 94 F.3d 1353, 1361 (9th Cir.1996)). The INS bears the burden to show by "a preponderance of the evidence ... that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there." Id.; see also Singh, 69 F.3d at 381.
 
 
 18
 Vassil and Tzvetanka's lives have been threatened specifically; these specific threats are "[a] key factor in finding evidence sufficient for withholding of deportation." Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir.1988). Vassil was beaten and arrested numerous times after engaging in anti-communist activity. Vassil, Tzvetanka and Ganka are entitled to withholding of deportation.
 
 III. Application of Nikolay Vassilev Nikolov
 
 19
 Nikolay claimed a well-founded fear of persecution because he is a homosexual. The BIA has held that gays and lesbians constitute a social group and may be granted asylum based on their membership in that group. See In re Toboso-Alfonso, 20 I & N Dec. 819 (BIA1990). The IJ concluded, however, that Nikolay had not made a sufficient showing that he had been or would be persecuted on this basis.
 
 
 20
 Nikolay testified that a military officer hit him with a hose after he told the officer he was a homosexual. He also testified that the government considered homosexuals crazy, declared them to be criminals, and required that they be placed in mental hospitals. However, Nikolay failed to support his generalized and conclusory assertions with specific evidence that in fact homosexuals "are persecuted, have a well-founded fear of persecution, or that [his] life or freedom would be threatened because of that status." Id. at 822.
 
 
 21
 Nikolay also testified he did not want to return to Bulgaria because he did not want to serve in the military and because of his father's political opinions and trouble with the government. Nikolay's desire to avoid service in the military is insufficient grounds for asylum. "A government's conscription efforts do not constitute persecution on account of political or religious beliefs except in those rare cases where a disproportionately severe punishment would result on account of those political or religious beliefs." See Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990). Since the government has not threatened to punish Nikolay if he does return, and Nikolay has not indicated that he would face a disproportionately severe punishment, the denial of his application is affirmed.
 
 
 22
 We note, however, that Nikolay could be permitted to stay in this country by obtaining a visa under 8 U.S.C. § 1153 or other provisions of the act based upon the asylum status of his family. Since unmarried sons of an alien lawfully admitted for permanent residence can be granted a visa, see 8 U.S.C. § 1153(a)(2), if his father becomes a permanent resident, Nikolay may be issued a visa.
 
 IV. Conclusion
 
 23
 The petition for review is granted. The decision of the BIA regarding Vassil, Tzvetanka and Ganka is reversed. The decision regarding Nikolay is affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3